1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8
9
### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| RAE LAVERN JONES, | Case No. 1:15-cv-00225-LJO-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 18, 20, 22) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

11
12
13
14
15
16
17
18

19
## I.

20
## INTRODUCTION

21      Plaintiff Rae Lavern Jones ("Plaintiff") seeks judicial review of a final decision of the

22  Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

23  disability benefits pursuant to the Social Security Act.   The matter was referred to the

24  undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

25      Plaintiff suffers from back problems, broken right heel, right shoulder dislocation, head

26  injury, knee problems, breathing problems, affective disorder and osteoarthritis.  For the reasons

27  set forth below, it is recommended that Plaintiff's Social Security appeal be granted, Defendant's

28  motion for summary judgment be denied, and this action be remanded for further proceedings.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff received a prior unfavorable decision on May 23, 2008 based on severe impairments of status-post fracture right heel, obesity, and substance abuse disorder.  (AR 71-80.)

Plaintiff protectively filed the instant Title XVI application for supplemental security income on February 8, 2012.  (AR 178.)  Plaintiff's applications were initially denied on July 5, 2012, and denied upon reconsideration on January 31, 2013.  (AR 116-19, 123-27.)  Plaintiff requested and received a hearing before Administrative Law Judge Daniel G. Heely ("the ALJ").  Plaintiff appeared for a hearing on September 17, 2013.  (AR 34-70.)  On October 21, 2013, the ALJ found that Plaintiff was not disabled.  (AR 16-29.)  The Appeals Council denied Plaintiff's request for review on December 15, 2014.  (AR 1-3.)

### A.        Relevant Hearing Testimony

Plaintiff testified at a hearing on September 17, 2013.  (AR 38-62.)  While in the Marine Corp, Plaintiff took 22 college credits.  (AR 38.)  Plaintiff has not worked since 1984.  (AR 39.)  Plaintiff has been involved in some product testing for which he is paid.  (AR 39-43.)  Plaintiff goes to an office with a long line of people waiting to get into the testing program.  (AR 41.)  He has a patch put on and then it is taken off that same day or the next.  (AR 41.)  Plaintiff has been participating in the program for five years.  (AR 41.)  He goes in daily so they can monitor his reaction to the products that are being tested.  (AR 43.)

Plaintiff had a head on collision with another bicycle in 1987 and was told not to work anymore.  (AR 44.)  Plaintiff has limited movement of his body parts and takes medication.  (AR 44.)  When Plaintiff over exerts he gets mucus that causes his breathing to clog up.  (AR 44.)  Plaintiff smokes five to fifteen cigarettes a day.  (AR 45.)  Plaintiff drinks a quart or two of beer every other day.  (AR 45.)  Plaintiff is not using any illegal drugs.  (AR 46.)  He last used marijuana about eight or nine months prior to the hearing.  (AR 61.)

Plaintiff is not having any mental health issues.  (AR 46.)  Plaintiff had mental health issues back in the day, but quit taking his meds.  (AR 46.)  Plaintiff is prescribed several

1   medications and takes them as prescribed.  (AR 47.)  He has no side effects from any of his

2   medication.  (AR 47.)

3        Plaintiff has constant pain in his spine, neck, and back.  (AR 55.)  Plaintiff does not stand

4   on his feet for long periods and needs to constantly readjust while sitting.  (AR 55.)  Plaintiff is

5   able to stand for a minute or two before he needs to lean on something for balance.  (AR 55.)

6   Plaintiff is able to walk for five to ten minutes.  (AR 56.)  Plaintiff can lift a box of pots and pans

7   or plates.  (AR 56.)  He can lift ten to fifteen pounds.  (AR 57.)  Plaintiff started hearing voices

8   after he was put on a certain medication.  (AR 57.)  Plaintiff sometimes hears voices but they are

9   mild.  (AR 57.)  In 1982, Plaintiff hurt his knee playing basketball.  (AR 58.)  Every two to three

10  months his knee will swell up on him.  (AR 58.)  Plaintiff broke the heel in his right foot and has

11  limited movement in his foot.  (AR 59.)  He has constant pain in his foot that feels like needles.

12  (AR 60.)  This contributes to his balance issues and his problems walking.  (AR 60.)  Plaintiff

13  has pinched nerves in his spine.  (AR 60.)

14       Plaintiff is homeless and moves between his sister and his brother's house every day or

15  two.  (AR 47.)  Plaintiff has lived on the street in the past.  (AR 48.)  Plaintiff receives food

16  stamps and Medi-Cal and shops at the local grocery store.  (AR 48.)  Plaintiff does not have a car

17  so he walks or takes the bus.  (AR 49.)  He used to ride a bike until it was stolen.  (AR 49.)

18  Plaintiff makes seven to eight dollars a month by recycling.  (AR 49.)

19       During the day, Plaintiff stays around the house or goes to the park or downtown to

20  watch television.  (AR 50.)  Plaintiff watches television eight to twelve hours per day.  (AR 50.)

21  Plaintiff goes to the Salvation Army and church.  (AR 51.)  Plaintiff is not able to work a

22  typewriter anymore and cannot afford a cellphone.  (AR 50.)

23       Plaintiff has issues with lack of concentration and his memory.  (AR 51, 56.)  Plaintiff's

24  lack of concentration is getting worse.  (AR 52.)  Plaintiff sleeps two to three hours, wakes up,

25  and sleeps another half hour.  (AR 52.)  When able to, Plaintiff sleeps during the day.  (AR 52.)

26       Plaintiff does not like to be around other people because they ask him for things and it

27  gets on his nerves and he gets nervous when he is in a crowd.  (AR 53, 57.)  Plaintiff would have

28  trouble working because he wants to do things correctly so it slows the work down.  (AR 53.)

Plaintiff does not have trouble taking instruction from others.  (AR 54.)  Plaintiff handles stress by walking away from the situation rather than letting it build and get him in trouble.  (AR 54.)

A vocational expert, Linda M. Ferra, also testified at the hearing.  (AR 63-68.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since the application date of February 8, 2012.

- Plaintiff has the following significant impairments: affective disorder and osteoarthritis.

- Plaintiff does not have an impairment of a combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to lift or carry 50 pounds occasionally and 25 pounds frequently.  He can sit, stand, and walk six hours in an eight hour workday; never climb ladders, ropes or scaffolds and occasionally climb stairs or ramps.  Plaintiff should not work around hazards such as moving dangerous machinery or unprotected heights, and can occasionally operate foot pedals or foot controls if required.  Plaintiff is limited to simple routine and repetitive tasks with occasional public contact.

- Plaintiff has no past relevant work.

- Plaintiff was born on January 23, 1957 and was 55 years old which is defined as an individual closely approaching advanced age on the date the application was filed.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not an issue because Plaintiff has no past relevant work.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy

4

that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, since the date the application was filed.

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

1   Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

2   disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

3   Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

4   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

5   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

6   considering the record as a whole, a reasonable person might accept as adequate to support a

7   conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

8   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

9        "[A] reviewing court must consider the entire record as a whole and may not affirm

10  simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

11  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

12  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

13  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

14  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

15  upheld.").

16                                          **IV.**

17                          **DISCUSSION AND ANALYSIS**

18       Plaintiff alleges error with both his physical and mental residual functional capacity as

19  found by the ALJ.

20       **A.      The ALJ Did Not Apply A Presumption of Non-disability**

21       Initially, Plaintiff argues that the presumption of nondisability does not apply to this case.

22  Defendant responds that the ALJ did not apply the presumption and his determination of

23  nondisability was based on the review of the evidence.  The opinion of the ALJ discusses the

24  current medical evidence and the decision does not reference the prior finding of nondisability.

25  In making his disability determination, the ALJ gave the most weight to the opinions of the

26  agency physicians and stated his reasons for rejecting the limitations imposed by Dr. Kearns.

27  The Court agrees that the ALJ did not apply a presumption of nondisability but made a

28  determination of nondisability based upon his review of the evidence in the record.

**B.      Residual Functional Capacity Assessment**

First, the Court addresses Plaintiff's argument that the ALJ failed to provide legally adequate reasons to reject the opinion of Dr. Kearns in developing Plaintiff's mental residual functional capacity and in partially rejecting the opinion of Dr. Cushman.  Defendant responds that the ALJ did not reject the opinions of Dr. Kearns and Dr. Cushman but addressed them by limiting Plaintiff to no more than occasional public contact.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substance evidence, and the ALJ is to resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record.  Andrews, 53 F.3d at 1041.  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

1.      Diagnosis

Plaintiff argues that the ALJ erred by failing to accept or reject the diagnosis of Dr. Cushman and Dr. Kearns.  In his opinion, the ALJ found that Plaintiff had affective disorder and it was a severe impairment.  (AR 21.)  In making this determination, the ALJ considered

Plaintiff's history of drug abuse which appears to be in remission.  (AR 21.)  The ALJ found that Plaintiff's drug and alcohol abuse was not a contributing factor material to the disability determination.  (AR 21.)

On October 18, 2011, Plaintiff was diagnosed with unspecified episodic mood disorder.  (AR 280.)  Dr. Kearns treatment notes indicate a possible diagnosis of schizophrenia.  (AR 375, 376.)  Dr. Cushman diagnosed Plaintiff with pain disorder associated with both psychological factors and a general medical condition, cocaine dependence reportedly in full remission, cocaine-induced psychotic disorder with hallucinations and delusions in partial remission, cannabis abuse current, alcohol dependence reportedly in full remission, alcohol-induced mood disorder, and antisocial personality disorder.  (AR 401-402.)  In her May 10, 2013 report, Dr. Kearns listed Plaintiff's diagnosis as psychosis, nos.  (AR 429.)  The agency physicians diagnosed Plaintiff with affective disorder.  (AR 93.)  To the extent that the ALJ used an incorrect diagnosis it would be harmless error as long as he considered Plaintiff's symptoms and limitations in developing Plaintiff's RFC.

2.      The ALJ Erred in Failing to Address Plaintiff's Ability to Deal With Usual Stressors in the Workplace

Plaintiff argues that the ALJ failed to incorporate Dr. Cushman's findings that Plaintiff would have difficulty getting along with co-workers and the public and would have difficulty dealing with the usual stressors in the workplace, and Dr. Kearns opinion that Plaintiff would have difficulty interacting with others and coping with stress.  The ALJ gave more weight to the opinions of the State agency medical consultant and examiner.  (AR 27.)  The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ found that Plaintiff does have mental impairments, but his symptoms appear to be caused by his physical impairments.  (AR 25.)  Dr. Cushman found that Plaintiff had intellectual functioning in the low-average range.  (AR 25, 400.)  There were no significant

1  strengths or weaknesses across the subtests that were performed.  (AR 25, 400.)  Plaintiff was

2  able to listen to and accurately recall up to six digits forwards, inconsistently four digits

3  backwards and four sequentially.  (AR 25, 400.)  This suggested mild difficulties in Plaintiff's

4  verbal communication skills.  (AR 25, 400.)

5          The results on a simple, repetitive graphomotor test and subtests were in the average to

6  low range due to slowness in processing.  (AR 25, 400-401.)  Dr. Cushman found that these

7  results showed slower than thinking speed on tests which appeared to be due to delays in

8  physical handwriting rather than actual mental processing.  (AR 25, 401.)  The test results also

9  suggested that Plaintiff has good cognitive skills in the area of conventional problem solving,

10  good visual-perceptual abilities, and only mild visual-motor deficits.  (AR 25, 401.)  The testing

11  suggested no specific memory deficits relative to his intellectual functioning.  (AR 25, 401.)

12          Dr. Cushman found Plaintiff to be oriented in three spheres and able to name thirteen

13  fruits in thirty seconds which is good performance.  (AR 25, 401.)  Plaintiff had a Global

14  Assessment of Function ("GAF") of 55[1] which indicates moderate difficulty in social,

15  occupational, or school functioning.  (AR 25, 402.)  Dr. Cushman opined that Plaintiff would

16  benefit from a homeless treatment program, outpatient psychiatric counseling, and some type of

17  vocational training program.  (AR 25, 402.)

18          Dr. Cushman found that Plaintiff would have difficulties in performing detailed or

19  complex tasks in a work setting, but is capable of performing simple and repetitive tasks in a

20  work setting.  (AR 25-26, 402.)  Plaintiff would have difficulties with regular attendance and

21  consistent participation, in part due to his homeless situation.  (AR 26, 402.)  If his homeless

22  situation was resolved he would regularly attend and participate.  (AR 26, 402.)  Plaintiff is

23  capable of working a normal workday and workweek.  (AR 26, 402.)  Special or additional

24

---

25  [1] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of
functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to
26  impairments in functioning due to physical or environmental limitations."  Cornelison v. Astrue, 2011 WL 6001698,
at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of
27  Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)).  "A GAF score in the range of 51–60 indicates moderate
symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with
28  peers or coworkers)."  Cornelison,  2011 WL 6001698, at 4 n.6 (citing  American Psychiatric Association,
Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

supervision may be needed in the area of monitoring for substance abuse as well as managing interpersonal relationships in the work setting.  (AR 26, 402.)  Plaintiff is capable of following simple verbal instruction from supervisors, but not complex instructions.  (AR 26, 402.)  Plaintiff may develop difficulties in getting along with supervisors, coworkers, and the general public over any length of time.  (AR 26, 402.)  Plaintiff will have difficulties in dealing with the usual stressors encountered in a competitive work environment.  (AR 26, 402.)  Plaintiff is capable of managing his own funds, but Dr. Cushman has reservations about Plaintiff's emotional stability in managing his funds.  (AR 26, 402.)

Dr. Levinson completed a psychiatric review technique and medical source statement on July 2, 2012.  (AR 26, 97.)  Dr. Levinson found that Plaintiff had limitations in memory and understanding with marked limitations in his ability to understand and remember detailed instructions.  (AR 97.)  Plaintiff was cognitively capable of understanding and remembering simple and repetitive instructions, but not able to remember complex or detailed instructions.  (AR 97.)  Plaintiff was markedly limited in his ability to carry out detailed instructions and moderately limited in his ability to maintain concentration persistence and pace for extended periods of time and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (AR 97.)  Plaintiff was capable of maintaining attention and concentration for 1-2 step tasks, but would have difficulty maintaining attention and concentration for more complex tasks.  (AR 26, 97.)  Plaintiff had no limitations in social interaction.  (AR 97.)

Dr. Garcia completed a psychiatric review technique on January 25, 2013.  (AR 26, 108-109.)  Dr. Garcia determined that Plaintiff had mild restriction of activities of daily living and difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace.  (AR 26, 108.)  Viewing the medical record, there is substantial evidence in the record to support the ALJ's finding that Plaintiff is capable of performing simple routine and repetitive tasks.

While the ALJ limited Plaintiff to occasional contact with the public, he did not address Dr. Cushman's finding that Plaintiff may develop difficulties getting along with some

supervisors and co-workers and would have difficulties dealing with the usual stressors encountered in a competitive work environment.  (AR 402.)  The agency physicians did not adopt Dr. Cushman's opinion because it relied heavily on Plaintiff's subjective report of symptoms and limitations and the totality of the evidence does not support the opinion.  (AR 98.) They found that Dr. Cushman's opinion contains inconsistencies which make it less persuasive, and the opinion is without substantial support from other evidence in the record.  (AR 98.)

A psychiatric review technique was completed by an agency physician on July 2, 2012. (AR 93-95.)  Plaintiff was found to have affective disorders and substance addiction disorders. The opinion states:

> [Plaintiff] claims that he hears voices, but states that the voices are both inside and outside his head.  He did not appear to be responding to internal stimuli at the [consultative examination].  The MER indicates that some of the voices may be due to cocaine use.  [Plaintiff] also indicates that his voices are ameliorated with Risperdal.  His alleged voices did not appear to limit his ability to maintain attention and concentration on psychometric testing.

(AR 95.)

The agency physician stated that great weight could not be given to Dr. Cushman's opinion because the limitation for maintaining regular attendance and participation was based on Plaintiff's homelessness and not his psychiatric condition.  (AR 95.)  Special or additional supervision to monitor substance abuse could not be considered.  (AR 95.)  "It would appear that the other limitations regarding social interaction are due in part to [Plaintiff's] homelessness, and possibility [rule out] diagnosis of antisocial personality [disorder].  [Plaintiff] was noted to be generally cooperative and agreeable throughout the interview and testing with euthymic mood." (AR 96.)  The assessment only limited Plaintiff to one to two step tasks.  (AR 97.)

In addressing Dr. Cushman's opinion the agency physician stated that Dr. Cushman's opinion relied heavily on Plaintiff's subjective reports of his symptoms and limitations and the totality of the evidence does not support the opinion.  (AR 98.)  The opinion contains inconsistencies and is without substantial support from other evidence in the record making it less persuasive.  (AR 98.)  Ultimately, the finding was that Dr. Cushman's "opinion is an overestimate of the severity of [Plaintiff's] restrictions/limitations and based only on a snapshot

of [Plaintiff's] functioning."  (AR 98.)  However, Dr. Kearns also opined that Plaintiff has a psychotic thought pattern and auditory hallucinations that would make coping with stress and interaction with others difficult.  (AR 429.)

Other than boilerplate language that Plaintiff's statements in regards to his mental limitations are not entirely credible, the ALJ did not provide any reasons to reject Plaintiff's credibility as to his mental impairments, much less clear and convincing reasons.  Lester, 81 F.3d at 834.  The ALJ notes there were periods of time for which Plaintiff was not taking medication.  (AR 24-25.)  Failure to comply with or seek treatment can support an adverse credibility finding, Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008), "but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); see also Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (failure to seek or comply with treatment attributable to mental illness is not basis to discredit claimant).

Here, Plaintiff stopped taking Risperdal because he was concerned with side effects.  (AR 462.)  As to the failure to seek treatment, there are several instances in the record where Plaintiff stated that he does not inform people that he hears voices or has phobias for fear that they will think he is crazy or he will be 5150.  (AR 287, 52.)  There is also support for Dr. Cushman's findings as the medical record demonstrates a history of mental health issues.

The first mention of mental health issues in the instant record is on October 18, 2011.  (AR 280.)  Plaintiff admitted that he was hearing voices and that he was afraid to mention it because he might be 5150[2] for saying he hears voices.  (AR 287.)  The record includes a diagnosis of unspecified episodic mood disorder.  (AR 280.)

Dr. Kearns began treating Plaintiff November 10, 2011.  (AR 376.)  At that time, he reported sleeping poorly, hearing voices, and seeing rodent faces on humans.  (AR 376.)  He stated the voices are not too bothersome to him.  (AR 376.)  The record notes that Plaintiff

---

[2] When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, . . . or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation.  Cal. Pen. Code § 5150.

probably has schizophrenia, is recently homeless and declines help, but is open to trying Risperdal.  (AR 376.)  On December 9, 2011, Plaintiff reported that he is still hearing voices but the Risperdal helps.  (AR 375.)

On January 5, 2012, Dr. Kearns noted that Plaintiff probably has schizophrenia and is self-medicating with alcohol.  (AR 375.)  On February 6, 2012, the medical record notes, "Schizophrenia homeless, getting beat-up – not taking med – needs permanent housing."  (AR 373.)

On June 4, 2012, Plaintiff reported to Dr. Stearns that he had stopped taking his Risperdal because he was worried about adverse side effects after seeing advertisements on television.  (AR 462.)  He was hearing minimal voices.  (AR 462.)

On June 7, 2012, Plaintiff reported to Dr. Cushman that he had received inpatient psychiatric treatment for several days in 1987.  (AR 397.)  He was hearing voices at the time and was placed on anti-psychiatric medications.  (AR 397.)  He stopped taking the medication after about six months.  (AR 397.)  Plaintiff reported a history of intermittent outpatient psychiatric treatment in the form of anti-psychotic medications.  (AR 397.)  Plaintiff had been hearing voices since he was about thirty years old.  (AR 397.)  The voices come from both inside and outside of his mind.  (AR 397.)  He tends to hear the voices more at night which causes him to have difficulty sleeping.  (AR 397.)  When he takes anti-psychotic medications the voices decrease but they never completely go away.  (AR 397.)  Plaintiff also has a history of paranoia, which is currently significantly improved.  (AR 397.)

On May 6, 2013, Plaintiff saw Dr. Kearns and stated he was trying to get disability benefits.  (AR 442.)  He complained of decreased concentration and hearing voices.  (AR 442.)  Risperdal was restarted.  (AR 442.)

During the September 17, 2013 hearing Plaintiff testified that was not having any mental health issues.  (AR 46.)  Plaintiff had mental health issues back in the day, but quit taking his medications.  (AR 46.)  Plaintiff stated that he had phobias, but did not generally mention it because he did not want people to think he is crazy.  (AR 52.)  Plaintiff also testified that sometimes he hears voices.  (AR 57.)  When asked if he was hearing them now, Plaintiff stated

that he hears voices but they are mild.  (AR 57.)  He finds it amazing that people around him hear them too because they respond "to the questions of noises that they made in [his] head."  (AR 57.)

When Plaintiff was asked during the hearing if he would have trouble handling the stress in a normal workplace, he stated, "Yeah, it's easy to walk away from it than let it build and get you in trouble."  (AR 54.)  He handles stress by getting away from it.  (AR 54.)

The ALJ erred by not providing specific and legitimate reasons to reject the finding of Dr. Cushman that Plaintiff would have difficulty dealing with the usual stressors encountered in a competitive work environment.  None of the agency physicians addressed this in their opinions and Dr. Cushman's opinion is supported by the report of Dr. Kearns who regularly treated Plaintiff from November 10, 2011.  Further, the ALJ did not address the opinion that Plaintiff would have difficulties interacting with supervisors and co-workers.  Therefore, the Court recommends that Plaintiff's appeal of the final decision of the Social Security Commissioner be granted.

      c.    <u>Substantial Evidence Does Not Support the Physical Residual Functional Capacity Assessment</u>

Plaintiff also argues that the ALJ erred by relying on the opinion of Dr. Hernandez that was not in the medical record in developing his RFC and failing to provide legally sufficient reasons for rejecting the opinion of Dr. Kearns.  Defendant responds that Plaintiff properly considered that Plaintiff's physical condition had not changed from the prior decision and gave legally sufficient reasons for rejecting the opinion of Dr. Kearns.

At Step Two, the ALJ found that Plaintiff had the severe impairment of osteoarthritis without any discussion of Plaintiff's alleged physical complaints.  (AR 21.)  The ALJ went on to consider Plaintiff's alleged impairments in developing his RFC.  (AR 23-27.)  Plaintiff was in an accident in 1984 that resulted in a head and spinal cord injury.  (AR 23.)  Plaintiff alleged that he has not been able to do much since then.  (AR 23.)  Plaintiff states that he gets tired easily and has back pain on and off.  (AR 23.)  Plaintiff complains of dizziness, inability to stand or walk for more than twenty minutes, and can only lift thirty pounds.  (AR 23.)  Plaintiff is generally

1  able to sit but must shift periodically.  (AR 23.)

2      The record notes some back issues at L4 and L5 and L5 and L6 in 2009.  (AR 308, 311.)

3  On April 24, 2009, Plaintiff's examination was normal except for some abnormal bronchial

4  sounds.  (AR 307.)  Plaintiff had normal examinations and no pain in August and September

5  2009.  (AR 316, 318.)  Plaintiff had some mild spinal tenderness to palpation on November 4,

6  2009.  (AR 313.)

7      On July 26, 2011, Plaintiff was seen and complained of a growth on right thigh and hand

8  pain.  (AR 306.)  On August 6, 2011, Plaintiff complained of knee pain after falling down a

9  flight of stairs.  (AR 24, 297.)  Plaintiff's knee was swollen and there was a palpable mass with

10  tenderness, examination was otherwise normal.  (AR 297-98.)  An x-ray of his right knee

11  revealed possible small suprapatellar bursal effusion n x-ray was taken and there appeared to be

12  calcification of the proximal aspect of the medical collateral ligament secondary to injury.  (AR

13  24, 296.)

14      Plaintiff was seen on August 30, 2011 and the record notes that the right lower extremity

15  was normal on inspection with tenderness on palpation.  (AR 24, 304.)  Range of motion was

16  restricted due to pain, but there was no joint instability.  (AR 24, 304.)  Plaintiff was seen

17  complaining of knee pain on September 13, 2011, and had normal examination findings.  (AR

18  292.)

19      Plaintiff complained of neck pain on September 28, 2011, after falling two days prior.

20  (AR 24, 284.)  Plaintiff's physical examination was normal with some mild tenderness to the

21  back at the right scapula on palpation.  (AR 285.)  Plaintiff was diagnosed with a cervical sprain.

22  (AR 286.)

23      On October 4, 2011, examination revealed full range of motion in Plaintiff's neck.  (AR

24  24, 289.)  Plaintiff complained of back pain, joint pains, and limitations of movement.  (AR 289.)

25  On October 18, 2011, Plaintiff complained of knee pain and had a normal examination.  (AR

26  282, 287.)

27      On October 27, 2011, Plaintiff complained of neck and knee pain and pain in his right

28  hamstring.  (AR 334-38.)  Plaintiff had spasms in his neck and some loss of lumbar lordosis with

lumbar spine vertebral tenderness.  (AR 337.)  Plaintiff's right calf was smaller than the left with a firm mobile 2 cm mass over the mid posterior lateral femur.  (AR 337.)  The record notes that Plaintiff is to stop drinking alcohol to excess and no more coke or crystal.  (AR 338.)

On November 7, 2011, Plaintiff reported having back and neck pain after falling down the stairs two months prior.  (AR 331.)  Examination revealed back pain with movement, but noted gait was steady, at a normal pace, without difficulty.  (AR 331-32.)

On November 10, 2011, Dr. Kearns noted pain in Plaintiff's right paracervical muscles and a bony deformity on his right ankle and findings for his right knee.  (AR 376.)  On November 16, 2011, Plaintiff had an x-ray of his right foot.  (AR 386.)  The results showed an old calcaneal fracture prominent posttraumatic exostosis proximally off the superior edge of the calcaneus posterior to the distal fibula.  (AR 386.)

Plaintiff saw Dr. Kearns on December 9, 2011.  (AR 375.)  Plaintiff complained of knee and back pain, and a right shoulder dislocation that interfere with his ability to work.  (AR 375.)  Plaintiff had an abrasion on his forehead and ecchymosis on left eye.  (AR 375.)  There were also findings on his neck.  (AR 375.)  He was put on Tramadol for his pain.  (AR 375.)

Plaintiff saw Dr. Ricks at the Podiatry Center on December 27, 2011.  (AR 393.)  Plaintiff was found to have significant abnormality of the calcaneus and talus of the right foot with a fusion of the lateral walls of both of these bones and a large posterior spur that appeared to be largely asymptomatic.  Neither surgery nor removal of the spur were advised as the symptoms in the right foot were fairly mild considering the severity of the original fracture and due to the lack of symptoms from the spur.  (AR 394.)  Plaintiff was advised to try over the counter arch supports.  (AR 394.)

Plaintiff was seen on January 5, 2012 and reported he was not using the Tramadol much.  (AR 374.)  Plaintiff was seen at the emergency room on January 30, 2012, complaining of arm pain after being assaulted.  (AR 323-28.)  Plaintiff stated that he had been assaulted twenty-five days prior and had two black eyes that were improving.  (AR 326.)  An x-ray of Plaintiff's left forearm showed no acute bony injury, but high-density fragments within the soft tissue likely representing metallic fragments from an old gunshot wound.  (AR 324.)  Plaintiff's examination

1 showed no abnormalities other than the left forearm.  (AR 326-37.)

2      Plaintiff saw Dr. Kearns on February 6, 2012.  (AR 373.)  He was taking his medications

3 as needed, but not taking his blood pressure medication because he did not want to get addicted.

4 (AR 373.)  The only consistent medications he took were the ibuprofen and Vicodin.  (AR 373.)

5 He had a hard protuberance at the right distal humerus.  (AR 373.)  The record notes that

6 Plaintiff was sitting comfortably in a chair.  (AR 373.)  A February 16, 2012 x-ray of his right

7 humerus revealed no bony abnormality, but an atypical deep soft tissue calcification.  (AR 385.)

8      On March 22, 2012, Plaintiff reported that he does not always have his medication.  (AR

9 370.)  On April 20, 2012, Plaintiff was seen by Dr. Kearns and reported that he was homeless

10 and drinks daily.  (AR 367.)  The record notes a mass on his humerus and he awaits MRI, poor

11 blood pressure control, and chronic pain with high risk for pain meds but does help pathology.

12 (AR 367.)

13      On June 4, 2012, Plaintiff reported that the tramadol helped with mild pain and the record

14 records sparing use of tramadol and Vicodin.  (AR 462.)  On June 21, 2012, Plaintiff had an MRI

15 of his right humerus which returned a normal examination with no evidence of any bony or soft

16 tissue mass.  (AR 476.)  On August 13, 2012, Plaintiff reported that he was out of pain

17 medication.  (AR 457.)  Plaintiff reported that he was basically doing well on November 2012.

18 (AR 24, 452.)

19      On February 7, 2013, Plaintiff reported pain in his neck, back, and feet after having been

20 off his medication for approximately one and one half weeks.  (AR 24, 457.)  Plaintiff's next

21 appointment was on May 6, 2013.  (AR 23, 442-44.)  He stated he was trying to get disability

22 benefits and complained of limited range of motion in his right ankle, left knee pain, neck and

23 back pain, decreased concentration, and hearing voices.  (AR 442.)  Plaintiff was informed that

24 he had to choose between using marijuana or an opiate.  (AR 442.)  Plaintiff chose to use an

25 opiate.  (AR 442.)

26      On May 10, 2013, Dr. Kearns completed a questionnaire re Plaintiff.  (AR 429-30.)  Dr.

27 Kearns opined that Plaintiff's medical problems would preclude him from performing fulltime

28 work at any exertional level.  (AR 429.)  His primary impairments are psychosis and chronic

1   pain in his neck, back, right foot and right knee.  (AR 429.)  This opinion is based on x-rays

2   showing degenerative changes and the auditory hallucinations reported by Plaintiff.  (AR 429.)

3   Dr. Kearns stated that Plaintiff would be able to sit four hours during an eight hour work day and

4   stand or walk thirty minutes at a time; and can only lift 10 pounds.  (AR 429-30.)  It was

5   unknown if Plaintiff has to lie down or elevate his legs, if he has any limitations due to hand

6   impairments.  (AR 430.)

7        Plaintiff had a CT of his abdomen on May 30, 2013, which showed rib fractures on the

8   right side.  (AR 474-75.)

9        Dr. Kearns saw Plaintiff on August 12, 2013 for a follow-up.  (AR 438-40.)  Plaintiff

10   denied using marijuana since his last visit and reported he had been in a fight with a friend.  (AR

11   438.)  He had mild tenderness in his right ribs.  (AR 438.)  Plaintiff had a CT scan of his head on

12   August 17, 2013.  (AR 473.)  There was no acute intracranial abnormality identified, but Plaintiff

13   had a fracture of the right mandible.  (AR 473.)

14        Plaintiff saw Dr. Kearns on August 26, 2013 for removal of sutures from his chin.  (AR

15   432-34.)  Plaintiff admitted to heavy drinking and received the laceration when he fell while

16   intoxicated. (AR 432.)  The record notes active alcohol abuse and it was explained to Plaintiff

17   that he would no longer be prescribed hydrocodone because it was not a safe option for him.

18   (AR 432.)

19        The ALJ gave weight to the opinions of the state agency examiner opinions and found

20   that Dr. Kearns opinion was highly conservative.  (AR 27.)  The ALJ stated that Dr. Kearns

21   limited Plaintiff to less than sedentary in exertional levels but did not know if he had any

22   limitations in his ability to reach, handle, feel, push/pull or grasp.  (AR 27.)  While Dr. Kearns

23   opined that Plaintiff can sit for four hours, stand or walk for thirty minutes at a time, and only lift

24   ten pounds the objective evidence does not support such limitations.  (AR 27.)  Dr. Fast opined

25   that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, could sit, walk,

26   or stand 6 hours in an 8 hour workday.  (AR 26.)  This opinion was concurred with by Dr.

27   Coleman.  (AR 26.)

28        The only reason the ALJ provided for failing to give weight to Dr. Kearns opinion was

that it was highly conservative and the objective evidence does not support the limitations. Further, the ALJ did not provide any reasons that more weight was given to the opinions of the agency physicians. While the ALJ cited the opinion of Dr. Hernandez as support of the RFC, Dr. Hernandez opinion was not part of the medical record here. For these reasons, the Court finds that substantial evidence does not support the ALJ's findings regarding Plaintiff's physical RFC.

### b.   This Action Should be Remanded for Further Proceedings

Plaintiff argues that the opinions of Dr. Cushman and Dr. Kearns should be credited as true, and this action should be remanded for payment of benefits. Defendant responds that the ALJ already incorporated Plaintiff's limitations into Plaintiff's RFC and any remand would require the ALJ to resolve what Plaintiff's limitations would mean from a capability standpoint.

The Court has the discretion to remand a case for either an award of benefits or for additional evidence. Smolen, 80 F.3d at 1292. The remand should be for "an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. District courts have flexibility in applying the credit as true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Further, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). The Ninth Circuit has recently clarified that "we may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.' " Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)).

Dr. Kearns opined that Plaintiff's psychotic thought pattern and auditory hallucinations would make coping with stress and interacting with others difficult. (AR 429.) As Plaintiff states in his opening brief Dr. Cushman's opinion is equivocal. Dr. Cushman's opinion indicates that Plaintiff's mental limitations will not preclude him from working, but he will have

difficulties in coping with the usual stressors encountered in a competitive work environment. (AR 402.)   However, there is nothing in the record to indicate how severe these limitations would be or whether they would preclude Plaintiff from working.   Therefore, further development of the record on these issues is required.

Additionally, the agency physicians found that Plaintiff's physical condition had not changed, even with his newly alleged physical complaints.   Review of the medical evidence would support such a finding.   Notably, the medical record demonstrates only sporadic complaints for each of Plaintiff's alleged disabilities and in many instances Plaintiff's complaints of pain were in response to an injury suffered by Plaintiff due to his intoxication.   Therefore, remand for payment of benefits would not be appropriate in this case.

The Court recommends that this action be remanded for further development of the record to determine if Plaintiff's severe impairments would preclude him from working.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff's appeal from the decision of the Commissioner of Social Security be granted;

2.     Defendant's cross-motion for summary judgment be denied; and

3.     This action be remanded for further development of the record as discussed herein

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __April 8, 2016__

UNITED STATES MAGISTRATE JUDGE